UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ERICA ARIAS on behalf of
      JUSTIN JAVIER ALMONTE,   **NOT FOR PUBLICATION**

               Plaintiff,

                                                                          **MEMORANDUM & ORDER**
   -against-                                                      CV-05-3419 (NGG)

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

               Defendant.
------------------------------------------------------------------X

GARAUFIS, District Judge.

      Erica Arias ("Plaintiff") has brought this action pro se on behalf of her son, Justin Javier Almonte ("Justin"), pursuant to 42 U.S.C. § 405(g), as amended, 42 U.S.C. § 1383(c)(3), to challenge the determination by the Commissioner of Social Security, Jo Anne B. Barnhart ("Commissioner"), denying his application for Supplemental Security Income ("SSI"). The Plaintiff maintains that her son is disabled because of, *inter alia,* a heart murmur, seizures, asthma, hyperactivity and allergies. The Commissioner, in response to the Plaintiff's complaint, moves for remand of the case for further proceedings in light of new evidence submitted by the Plaintiff. Plaintiff cross-moves for reversal or in the alternative remand of the ALJ's decision based on the evidence already in the record. For the reasons set forth below, the Commissioner's motion is GRANTED, and plaintiff's cross-motion is held in abeyance for the ALJ to consider the new evidence consistent with this opinion.

I.      **BACKGROUND**

A.      **Medical Evidence**

The Western Queens Health Associates submitted medical records indicating that it treated Justin from October 14, 1999 through August 9, 2004. (Id, at 143.) An undated report from the Western Queens Consultation Center ("WQCC") assesses Justin as having "ADHD symptoms dating back two years," and as "a frequently angry child . . . notable for frequent temper outbursts." (Id. at 157). Justin's symptoms have caused him to perform "significantly below his academic potential," and caused plaintiff to remove Justin from school "because of his bad behavior." (Id.). However, Justin had never been hospitalized for psychiatric problems, received no medication, and was in overall excellent physical health. (Id. at 158). On April 1, 2004, Dr. Mark Sperber, a one-time consultative examiner, opined that Justin has a heart murmur, asthma, and is hyperactive and has eczema, but that he has no restrictions, takes no medication, and is "functioning in an age appropriate manner." (Id. at 128-29). Dr. M. Malik, another consultative examiner, examined Justin's heart murmur, eczema, and nasal duct obstruction, and found that these impairments were not severe. (Id. at 130).

A WQCC mental status examination taken on June 11, 2004 assessed Justin as easily distracted, anxious, and hyperactive, with poor insight and awareness of his condition, a GAF[1] of

---

[1] GAF is an acronym which refers to an individual's score on the Global Assessment of Functioning Scale. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. Text Revision 2000) ("DSM-IV-TR"). The scale is used to report the "clinician's judgment of the individual's overall level of functioning" in light of his psychological, social, and occupational limitations. Id. A GAF score of 40 indicates that the individual has "some impairment in reality testing or communication . . . or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood . . . ." Id. at 34.

40, and in the diagnosis section is marked in Axis I "r/o ADHD" and "r/o oppositional testing," and in Axis III an allergy and heart murmur. (Id. at 159). His medication record from that period reflects that beginning in July 2004 Justin was prescribed with Ritalin and Atarax. (Id. at 161). Laura Enriquez, Justin's phychotherapist at the Western Queens Consultation Center, submitted a letter, dated October 7, 2004, stating that Justin began receiving psychotherapy once per week in May 2004, and that he would be attending psychotherapy twice a week. (Id. at 156). Session notes with Ms. Enriquez dated May 6, 2004 through October 28, 2004 generally depict Justin as aggressive, irritable, and unable to concentrate. (Id. at 165-80).

**B.    Non-Medical Evidence**

On October 6, 2004, Justin's school wrote a letter to the Elmhurst General Hospital stating that Justin "is presenting very serious behavioral problems in school and at home. He hits, kicks and bites other students. He doesn't respond to teacher's directions or rules. He doesn't follow his mother's rules." (Tr. at 87). The letter also references several times in which Justin expressed the wish to kill himself. (Id.). Notes dating from October through November 2005 that appear to be kept by Justin's teacher at school describe his violent outbursts during this period, including ten instances of hitting, pushing, biting and pulling the hair of other students and school officials, in addition to anti-social and disruptive behavior. (Id. at 181-87).

**C.    Plaintiff's Testimony**

At the hearing, the plaintiff testified that Justin injures himself, including hitting, biting, and scratching himself (id. at 194, 205), one instance in which he hit himself on a table and lost two teeth, and another instance in which he hit himself on a drawer and required four stitches. (Id. at 205). Plaintiff further stated that Justin twice expressed to her the desire to kill himself.

(Id. at 208-9). She also testified that Justin hits and pulls the hair of his two-year old sister (id. at 204), and hits, bites, and kicks other students, including one student whom he gave a bloody nose. (Id. at 196, 208). She testified that Justin has no friends independent of family members. (Id. at 203). She testified that at night Justin screams and yells. (Id. at 195). She testified that Justin is treated by a psychiatrist, Dr. Tandon, and a psychotherapist, Laura Enriquez at the WQCC. (Id. at 198). Justin, at the time of the hearing, took Methylphenid, Hydrocholorine, and medication phonetically spelled "Bedline." (Id. at 195). Plaintiff also testified that Justin dresses himself with assistance, and does his homework. (Id. at 201-3).

**D.    Procedural History and New Evidence**

Plaintiff applied for SSI on January 23, 2004, claiming her son Justin became disabled on January 1, 1993. (Tr. 53-62).[2] Plaintiff's application was denied, at which point she requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 28). Plaintiff's hearing was held on October 26, 2004 before ALJ Stauss. (Tr. 188-212). On February 15, 2005, ALJ Strauss issued a decision in Plaintiff's case finding the Plaintiff was not disabled because Justin's primary impairment, Attention Deficit Hyperactivity Disorder ("ADHD") did not have an "extreme" limitation in any domain of function, or a "marked" limitation in two domains of functioning, and does not functionally equal the severity of the impairment listed in Part B of Appendix 1 to Subpart P. (Tr. 13-20). Timely commencement of this suit followed.

*1.    Plaintiff's Cross-Motion*

This court must first clarify the record as to Plaintiff's posture towards this motion. The

---

[2] "Tr." refers to the numbered pages of the transcript of the Administrative Record filed with the court by the Commissioner.

4

Commissioner states that it moved for judgment on the pleadings on February 2, 2006, and that around February 25, 2005, plaintiff submitted new evidence to the United States Attorney's office of the Eastern District of New York. (Decl. Karen Callahan, dated April 24, 2006 ¶¶ 4-5). No such motion by the Commissioner is docketed with this court. Nevertheless, Assistant United States Attorney Callahan, counsel for the Commissioner, docketed this Plaintiff's submission as opposition to the motion to remand. In this submission is an undated cover letter that states, "I don't agree with Ms. Karen T. Callahan [sic] decision." (Pl. Ltr. to the Ct., at 1). The letter objects to the Commissioner's position that Justin "should not be given the monies owed to him from the day of my application," and states that Justin's "condition has always been the same since the day I made an application for SSI." (Id.). I accept Ms. Callahan's representation in her docketing notes that this letter was submitted after service of her motion to remand, and that this letter opposes the Commissioner's motion to remand based on new evidence. To the extent that the Commissioner argues that the ALJ's decision is supported by substantial evidence, I deem plaintiff's letter as a cross-motion for reversal, and, in the alternative, remand of the ALJ's decision based on the evidence already in the record.

2. *Plaintiff's New Evidence*

On or around February 25, 2006, plaintiff submitted new documents to the Assistant United States Attorney's office of the Eastern District of New York. These documents include the following:

A letter, dated February 21, 2006, from Pedro Goiricelaya, M.D., stating that he has treated Justin since November 3, 2004, and that Justin takes medication for ADHD. (Pl's Ltr. Ct., Ex. A, at 7).

5

Two letters, dated February 9, 2006, from Laura Enriquez, Justin's psychotherapist, and Frantz Lubin, M.D., Justin's treating physician. Ms. Enriquez states that on June 6, 2004, Justin's treating physician, Dr. Tandon, diagnosed Justin with ADHD and Oppositional Defiant Disorder, and at the time his current GAF score was 40. Ms. Enriquez stated that since then the prescribed Ritalin and Atarax were unable to improve Justin's behavior, and after a new psychiatric evaluation, he was prescribed Adderal and Seroquel. Ms. Enriquez states that Justin "still exhibits severe hyperactivity symptoms and poor ability to function in school and at home." Dr. Lubin confirms that Justin takes Adderal and Seroquel. (Id. at 8-9).

A psycho/educational evaluation by Rosa Ortiz, a school psychologist for the New York City Department of Education, states that Justin has an "inability to stay focus [sic] on task, short attention span, constant distractibility, oppositional behavior, and low frustration tolerance." (Id. at 13). His verbal I.Q. was labeled "borderline range." (Id. at 14). The evaluation describes Justin's violent and disruptive outbursts in school, and summarizes "he annoys others and is resentful and angry." (Id. at 15.) The report states that Justin "appears not to have that emotional connection of what is right or wrong and how it affects people emotionally." (Id. at 21).

A letter, dated October 6, 2004, from Justin's school, states that Justin told his mother that he wanted to kill himself and that he "had made remarks about killing himself in the past. (Id. at 24). The letter also notes that Justin is in special education classes. (Id.)

Three additional letters are provided: one dated May 1, 2006, from Dr. Lubin, stating that Justin has ADHD and has seen Dr. Lubin since 2004 (Lubin Ltr. Ct., dated May 1, 2006); a second letter from Dr. Lubin dated May 10, 2006 stating that Justin takes Adderal and Seroquel (Lubin Ltr. Ct., dated May 10, 2006); and a third letter dated May 5, 2006 from Ms. Enriquez,

6

stating that the WQCC never received a form from SSA asking for information regarding Justin, and that "there was no way to send additional information for this patient before [plaintiff] asked for it."  (Enriquez Ltr. Ct., dated May 5, 2006).

## II.  DISCUSSION

### A.  Standard of Review

The role of a district court in reviewing the Commissioner's final decision is limited.  The court determines only whether the Commissioner's conclusions "'are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard.'" Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (quoting Beauvoir v. Chater, 104 F.3d 1432, 1433 (2d Cir.1997)); see also 42 U.S.C. § 405(g).  If supported by "substantial evidence," the findings of the Commissioner as to any fact shall be conclusive.  Richardson v. Perales, 402 U.S. 389, 390 (1971).  "Substantial evidence" is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 401 (internal citations omitted).  "It is the function of the [Commissioner], not [the reviewing courts] to resolve evidentiary conflicts and to appraise the credibility of witnesses . . . ." Aponte v. Sec'y, Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984) (internal citation and quotation marks omitted).

A full hearing includes a well-developed medical record.  Because of the non-adversarial nature of a benefits hearing, where the record is incomplete, an ALJ has an affirmative duty "to develop a claimant's medical history even when the claimant is represented by counsel . . . ." Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) (citing Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996)).  Further, in evaluating medical evidence, an ALJ must give good reasons for the weight

the ALJ assigns to the opinions of a claimant's treating source. 20 C.F.R. § 404.1527(d)(2); see Rosa, 168 F.3d at 79 (citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)). Where the ALJ fails to consider evidence, remand pursuant to the fourth sentence of 42 U.S.C. § 405(g) is appropriate. "When the record provides persuasive proof of disability . . . . [a reversal is appropriate, whereas] when there are gaps in the administrative record or the ALJ has applied an improper legal standard," the case should be remanded to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for the further development of the record. Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980).

In contrast, pursuant to the *sixth* sentence of 42 U.S.C. § 405(g), a district court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). A sixth sentence remand is appropriate upon a showing that the proffered evidence is (1) "'new' and not merely cumulative of what is already in the record,"; (2) "material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and" presents a reasonable probability that the Commissioner might have decided plaintiff's application differently; and (3) there was good cause for the plaintiff's "failure to present the evidence earlier. Lisa v. Sec. of HHS, 940 F.2d 40, 43 (2d Cir. 1991) (quoting Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir. 1988)). "Sentence six remand orders are considered interlocutory and non-appealable, because the district court retains jurisdiction over the action pending further development and consideration by the ALJ." Raitport v. Callahan, 183 F.3d 101, 104 (2d Cir. 1999) (per curiam).

**B.     Decision of the ALJ**

To receive benefits, a claimant must be "disabled" within the meaning of the Social Security Act. Shaw v. Chater, 221 F. 3d 126, 131 (2d Cir. 2000). A child is considered disabled if he/she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

The governing regulations set forth a three-step sequential analysis to determine whether a child is disabled. See 20 C.F.R. § 416.924(a). The first step is to determine if the child engages in substantial gainful activity. If the child does, he or she is not disabled for purposes of SSI benefits. 42 U.S.C. § 1382c(a)(3)(C)(ii); see also 20 C.F.R. §§ 416.924(a) and (b). Second, the ALJ must determine whether the child has a physical or mental impairment or combination of impairments that is severe. If the impairment is not severe, the child is not disabled. 20 C.F.R. § 416.924(c). If the impairment is severe, the third step is to decide whether the impairment meets, medically equals, or functionally equals the listed impairments. If so, the child is disabled. 20 C.F.R. § 416.924(d).

A child's impairment meets the listings of Appendix 1 of the regulations if it is of listing-level severity, i.e. it must meet all criteria required for that listed impairment. An impairment is medically equal to a listed impairment if the child's medical findings "are at least of equal medical significance to those of a listed impairment." 20 C.F.R. § 416.926(a)(2). Part B of Appendix 1, which lists impairments for children, includes a listing for Attention Deficit Hyperactive Disorder (ADHD). The criteria which must be met to meet this listing require

medically documented findings of (a) marked inattention, (b) marked impulsiveness, and (c) marked hyperactivity. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part B, § 112.11. In addition, there must be a marked impairment in at least two of the following areas: (a) age-appropriate cognitive/communicative functioning; (b) age-appropriate social functioning; (c) age-appropriate personal functioning; or (d) maintaining concentration, persistence, or pace. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part B, § 112.11B (incorporating § 112.02).

Functional equivalence for a child is determined by evaluating how the child's limitations affect six "broad areas of functioning known as 'domains.'" See Thompson v. Barnhart, 02-CV-4930, 2004 WL 896663 (E.D.N.Y. Mar. 26, 2003); 20 C.F.R. § 416.926a. To be functionally equivalent, the child's impairment must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a. The domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating to others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. See 20 C.F.R. § 416.926a(g) - (l). A "marked" limitation is characterized as an impairment which "seriously interferes with [the child's] ability to independently initiate, sustain or complete activities," whereas an "extreme" limitation is defined as an impairment which "very seriously" interferes with those abilities. 20 C.F.R. § 416.926a(e)(2)(i), (e)(3)(i).

ALJ Strauss first found that Justin does not medically meet or equal a listed impairment in Appendix 1 Subpart P of the Regulations, because while Justin has ADHD, he has no marked limitation in cognitive functioning or age appropriate personal functioning. In reaching this decision, ALJ Strauss found that "there are no tests that show a marked impairment and no other

10

records show a marked impairment in cognitive functioning or in maintaining concentration, persistence or pace," and rejected plaintiff's testimony regarding Justin's self-injuries because "this has not been otherwise medically documented." (Tr. at 16).

Second, ALJ Strauss found that Justin does not have an impairment that is "functionally equal" to the listings. In reaching this result, the ALJ made the following findings regarding the six "domains of functioning":

Justin has no marked limitations in acquiring and using information, because the plaintiff testified that Justin does his homework, and Justin's pediatrician and the medical consultant did not indicate any cognitive difficulties. (Id. at 17).

Justin has less than marked limitations in his ability to attend to and complete tasks, because the plaintiff testified that Justin does his homework, and Justin's teacher's report that he does not follow directions fails to establish a marked limitation in this area. (Id. at 17-18).

Justin has a marked limitation in interacting and relating with others, based on school reports of Justin's poor behavior toward his peers and plaintiff's testimony that Justin does not share "his things" during play. (Id. at 18).

Justin has a less than marked limitation in his ability to move about and manipulate objects, as none were shown in the record. (Id. at 18).

Justin has a less than marked limitation in caring for himself, because he dresses himself in an age-appropriate way. The plaintiff's testimony of Justin's self-injurious behavior "is not medically documented in the record," and while school reports show his impulsivity, he has improved with medication as reported at psychotherapy sessions. (Id. at 18).

Justin has a less than marked limitation in health and physical well-being. (Id. at 18).

The ALJ therefore found that Justin has not been under a "disability" at any time from the application date to the hearing. (Id.).

C.     **Remand for Consideration of Evidence In the Record**

The ALJ's decision is not supported by substantial evidence. Regarding the second "domain," the ability to attend to and complete tasks, the ALJ failed to consider the session notes of Ms. Enriquez, Justin's psychotherapist, that describe Justin's inability to complete tasks, both as evidence of inability to complete tasks, and in assigning the appropriate weight to the school report. While Ms. Enriquez is not a doctor, inasmuch as she is a treating non-physician who has extensive and sustained contact with Justin, the ALJ should have considered what weight to afford her statements and opinions before rejecting them. See Mejia v. Barnhart, 261 F. Supp. 2d 142, 148 (E.D.N.Y. 2003) (citing 20 C.F.R. § 404.1513(a)).

The ALJ's finding that Justin has a marked (as opposed to an extreme) limitation in interacting and relating with others is not supported by substantial evidence, because the ALJ failed to consider the weight and significant of episodes of violence by Justin. School reports in the record establish that between October and November 2004 Justin gave a peer a bloody nose, bit, kicked, and punched other students, in total committing ten acts of violence against peers in a two month period. This evidence, taken in connection with plaintiff's testimony that Justin engages in regular, violent conduct towards his two-year old sister, could support a finding that Justin has an "extreme" impairment in his ability to interact and relate with others. While the ALJ is entitled to reject evidence, for this court to meaningfully review the ALJ's decision, the ALJ must state why that evidence is not entitled to consideration. See Sutherland v. Barnhart, 322 F. Supp. 2d 282, 289 (E.D.N.Y. 2004) ("It is grounds for remand for the ALJ to ignore parts

12

of the record that are probative of the claimant's disability claim.") In the instant matter, the ALJ simply ignored this evidence, and the ALJ's conclusion of only marked limitation in interacting and relating to others is therefore not supported by substantial evidence.

Lastly, regarding the fifth "domain" of limitation in caring for himself, the ALJ's finding that the plaintiff's testimony as to Justin's self-injurious behavior is not medically documented misapplies the relevant law and is not supported by substantial evidence. The ALJ must consider all evidence that is directly relevant to one or more of the "domains" related to an appendix listing or an impairment that is "functionally equal" to a listing. Rivera v. Schweiker, 717 F.2d 719, 724 (2d Cir. 1983) (The ALJ's independent judgment about plaintiff's testimony "should be arrived at in light of *all* the evidence . . . .") (emphasis supplied). Justin's self-inflicted violence and suicidal expressions were documented by Ms. Enriquez, Justin's psychotherapist, Justin's school, and plaintiff. Furthermore, the ALJ's conclusion that Justin's self-injurious behavior is not medically documented is belied by Justin's diagnosis of ADHD, which the ALJ accepted, and Justin's GAF score of 40, which the judge did not acknowledge.[3] The ALJ should have considered whether testimony and documentary evidence of Justin's inability to care for himself was supported by Justin's ADHD diagnosis and GAF score of 40. Thus, the ALJ's conclusion that evidence of Justin's self-injurious behavior is not medically documented is not supported by substantial evidence.

Ordinarily, I would not hesitate to remand this decision for further proceedings consistent with this opinion. However, as I find that this case is appropriate for remand to consider new

---

[3] A GAF score of 40 indicates, *inter alia*, that a "child frequently beats up younger children, is defiant at home, and is failing at school." DSM IV-TR at 32.

evidence, I shall hold plaintiff's motion for reversal or remand in abeyance pending the ALJ's new decision. Should the ALJ find that the evidence taken as a whole does not lead to a finding of disability during the entire relevant period, I shall reconsider the plaintiff's motion.

**D.      Remand for Consideration of New Evidence**

I shall now consider whether to remand pursuant to the sixth sentence based on evidence submitted by the plaintiff on or after February 2006, which requires this court to determine whether the evidence is new, material, and that the plaintiff had good cause not to submit this evidence earlier. Lisa, 940 F.2d at 43. As the Commissioner urges that the evidence is new, material, and submitted with good cause, I shall only briefly explain my decision that a remand to consider this evidence is appropriate.

*1.      New or Cumulative*

I first consider whether the evidence forwarded by plaintiff on or after February 2006 and cited in this Memorandum and Order (M&O) is new and not merely cumulative.[4] Plaintiff submitted evidence that tends to show the following: (1) Justin in addition to ADHD has a secondary diagnosis of Oppositional Defiant Disorder ("ODD"); (2) the New York City Department of Education ("DOE") considers Justin to be severely ADHD symptomatic and unable to function in a regular classroom; (3) Justin did not take medication before turning five years old because his treating physician determined that before this time the medication was not age-appropriate; and (4) after two years of biweekly psychotherapy and two different sets of medication, Justin continues to have poor ability to function. As this evidence did not exist until

---

[4] In addition to the evidence cited in this M&O, plaintiff submitted evidence already in the record. I find without discussion that this evidence is cumulative.

after the hearing, I deem this evidence to be new, and not merely cumulative.

2.   *Material*

The evidence submitted strongly supports the finding that Justin has been disabled throughout the relevant period. The evidence tends to show limitations in the following five of the six total "domains": (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating to others; (4) self-care; and (5) health and physical well-being. The evidence tends to negate findings made by the ALJ based on evidence in the record. Evidence that Justin's treating physician felt that Justin's age precluded the use of ADHD medication until he turned five years old tends to disprove the inference that Justin did not use medication because his symptoms were not serious.

This evidence also clarifies evidence that is already in the record. Justin's ODD diagnosis and evidence that DOE believes Justin cannot function in an ordinary classroom clarifies evidence already submitted that tends to show that Justin cannot cooperate with and is hostile to and violent towards peers and authority figures. Evidence that medication and psychotherapy have been unable to control Justin's impairments tends to show that these treatments would not have ameliorated his impairments beforehand. The evidence is therefore material regarding Justin's impairment throughout the entire period of the claim.

3.   *Good cause*

Lastly, the plaintiff had good cause not to submit this evidence earlier. As discussed *supra*, this evidence was not available to plaintiff until after the hearing. To the extent that the QWCC documentation submitted by plaintiff refers to treatment given during or before the hearing date, the letter from QWCC indicates that this evidence was unavailable to plaintiff

15

because the ALJ did not provide the appropriate documentation to secure its release. I therefore find that plaintiff had good cause not to submit this evidence earlier.

Accordingly, I find that plaintiff's evidence submitted during this appeal and not in the record is new, material, and that plaintiff had good cause not to submit it earlier, and that a remand is appropriate for the ALJ to consider this new evidence in connection with plaintiff's SSI claim on behalf of Justin.

E.     **Instructions to The ALJ on Remand**

On remand, I instruct the ALJ to determine whether this new evidence, considered in connection with the evidence already in the record, supports a finding that Justin has had a disability during any portion of the relevant period. ALJ Strauss is directed to address plaintiff's new evidence with "sufficient specificity to instruct [this] court why [he] believes or disbelieves the claimant's allegations . . . and whether his finding is supported by substantial evidence." Tirado, 842 F.2d at 598. While this remand is pursuant to the sixth sentence of Section 405(g), as I hold plaintiff's cross-motion in abeyance, I also instruct the ALJ to consider all the evidence in the record, mindful that this court shall ultimately determine whether the ALJ's decision is supported by substantial evidence. I remind ALJ Strauss that a treating physician's opinion is to be considered controlling unless contradicted by substantial evidence. See Havas v. Bowen, 804 F.2d 783, 785 (2d Cir. 1986) (holding that "a treating physician's opinion on the subject of medical disability, i.e., diagnosis and nature and degree of impairment, is . . . binding on the fact-finder unless contradicted by substantial evidence") (quoting Schisler v. Heckler, 787 F.2d 76, 83 (2d Cir. 1986)). Furthermore, the ALJ should consider what weight to afford the opinions of Ms. Enriquez, a non-physician psychotherapist who is familiar with Justin's treatment over a long

period of time.  Lastly, if plaintiff's testimony is rejected, the ALJ must support this conclusion with sufficient reasoning to allow this court to meaningfully review it.

## III. CONCLUSION

For all of the reasons stated herein, the Commissioner's motion for remand is GRANTED, and the Plaintiff's motion is held in abeyance pending the ALJ's consideration of the newly submitted evidence.  This case is therefore remanded for further administrative proceedings pursuant to the sixth sentence of 42 U.S.C. § 405(g).

SO ORDERED.


Dated: June 22, 2006                                            /s/ Nicholas G. Garaufis  
       Brooklyn, N.Y.                                     Nicholas G. Garaufis  
                                                         United States District Judge