UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ERICA ARIAS o/b/o JUSTIN JAVIER ALMONTE,

                    Plaintiff,

-against-

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

----------------------------------------------------------------X

**MEMORANDUM & ORDER**

**05-CV-3419 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Erica Arias ("Arias") brings this action on behalf of her son, Justin Javier Almonte ("Almonte"), now deceased, under 42 U.S.C. §§ 405(g) and 1383(c)(3). (Complaint (Docket Entry # 1).) Arias seeks judicial review of the Social Security Administration's ("SSA's") denial of her claim for Supplemental Security Income ("SSI"). (Complaint.) The Commissioner moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). ("Commissioner's Motion" (Docket Entry # 30).) Arias cross-moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) and seeks reversal of the Commissioner's determination that she was not entitled to SSI on behalf of her son. ("Arias's Motion" (Docket Entry # 28).) As set forth below, the court grants the Commissioner's Motion.

## I.    STANDARD OF REVIEW

### A.    Rule 12(c)

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." The standard of review under a Rule 12(c) motion is the same standard applied under a Rule 12(b)(6) motion. Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). To survive a Rule 12(b)(6) motion, the complaint must contain "sufficient factual matter . . . to state a claim to

relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (2009). A court is required "to accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008). In addition to considering the pleadings, the court may consider "statements or documents incorporated by reference in the pleadings . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." ATSI Commc'ns, Inc. v. Schaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

### B. Administrative Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). "[I]t is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998). "Legal error" consists of incorrect determinations on points of statutory or regulatory law made by the Commissioner. Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984). In assessing a legal determination made by the Commissioner, "[the] court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ. Failure to apply the correct legal standards is grounds for reversal." Id.

2

## II. BACKGROUND

Almonte was born on August 21, 1999. (Administrative Transcript ("Tr.") 53-55 (Docket Entry # 31).) On January 23, 2004 Arias filed an application for SSI on behalf of Almonte, her son. (Id. at 53-62.) The SSA denied Arias's application, and she requested a hearing before an administrative law judge ("ALJ"). (Id. at 28.) On October 26, 2004, ALJ Hazel C. Strauss held a hearing regarding Arias's claim. (Id. at 188-212.) On February 15, 2005, the ALJ issued an unfavorable decision, and Arias sought review before the SSA Appeals Council. (Id. at 6-20.) On June 16, 2005, the Appeals Council denied Arias's request for review. (Id. at 3-5.) Arias appealed her claim to this court on July 11, 2005. (See Complaint.) On June 22, 2006, the court issued a Memorandum and Order remanding Arias's case to the Commissioner to consider evidence that Arias submitted after the ALJ's unfavorable decision. (Docket Entry # 13.) The court then issued an Amended Memorandum and Order, to the same effect, on July 17, 2006 to reflect a minor change to the Commissioner's regulations. (Docket Entry # 18.)

On April 10, 2008, ALJ Strauss held a supplemental hearing at the direction of this court to consider the new evidence submitted by Arias. (Tr. 361-97.) On July 4, 2008, Almonte, then only eight years old, drowned in a swimming pool. (Id. at 219.) On July 25, 2008, the ALJ again issued an unfavorable decision (the "Notice and Decision"). (Id. at 217-32.) Arias then sought review of this decision before the Appeals Council, which denied her request on April 16, 2009. (Id. at 214-15.) On June 19, 2009, the Commissioner requested that the court reopen Arias's case. (Docket Entry # 20.) On June 22, 2009, the court reopened Arias's case and retained jurisdiction over Arias's claim by operation of 42 U.S.C. § 405(g). (Docket Entry # 21.) The Commissioner now moves for judgment on the pleadings to affirm the ALJ's Notice and

Decision. (Commissioner's Motion.) Arias opposes the Commissioner's motion and moves to reverse the Commissioner's decision that she is not entitled to benefits. (Arias's Motion.)

III. DISCUSSION

A. Standard of Review for Determining Child Disability

To determine whether a claimant-beneficiary is entitled to SSI on behalf of a child, an ALJ utilizes a three-step analysis, as set forth in 20 C.F.R. § 416.924(a). The Second Circuit, in Encarnacion ex rel. George v. Astrue, described this three-step analysis:

> First, the child must not be engaged in "substantial gainful activity." Second, the child "must have a medically determinable impairment(s)" that is "severe" in that it causes "more than minimal functional limitations." Third, the child's impairment or combination of impairments must medically or functionally equal an impairment listed in an appendix to the regulations. . . .
>
> For a child's impairment to functionally equal a listed impairment, the impairment must "result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." The domains that the regulations establish to determine whether impairments result in marked or extreme limitations are: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being. The SSA must determine whether an impairment or combination of impairments causes a "marked" limitation on a child's functioning in at least two of these domains, or an "extreme" limitation in at least one domain. A "marked" limitation is "'more than moderate' but 'less than extreme' " and "interferes seriously with" a child's "ability to independently initiate, sustain, or complete activities." An "extreme" limitation is " 'more than marked' " and "interferes very seriously with" a child's "ability to independently initiate, sustain, or complete activities." The regulations recognize that an impairment or combination of impairments may have effects in more than one domain; thus, the SSA evaluates a child's impairments in any domain in which they cause limitations.

568 F.3d 72, 75-76 (2d Cir. 2009) (internal citations omitted). The ALJ correctly used this three-step analysis in assessing Arias's claim. (Tr. 220.)

B. The ALJ's Findings: Steps One and Two

The ALJ found that, under step one of the analysis, Almonte did not engage in "substantial gainful activity." (Tr. 222.) The parties do not dispute this finding. Under step two

4

of the analysis, the ALJ found that Almonte suffered from severe attention deficit hyperactivity disorder ("ADHD") and oppositional defiant disorder ("ODD"). (Id. at 222-25.) The parties do not dispute these findings.

### C. The ALJ's Findings: Step Three

Under step three, an ALJ must undergo a two-step process in analyzing a child's severe impairments. First, an ALJ must determine whether a child's severe impairments "medically equal" an impairment in the in the Commissioner's "Listing of Impairments." See 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"). If a child's severe impairments do not "medically equal" an impairment in the Listing of Impairments, the ALJ must determine whether those impairments "functionally equal" such an impairment. George, 568 F.3d at 75-76. An ALJ must determine functional equivalency by weighing the severity of the child's impairments across the six domains set forth in 20 C.F.R. § 416.926a(b)(1) and described in George. Id. at 75-76.

#### 1. Medical Equivalency

The ALJ found Almonte's ADHD and ODD did not medically equal a condition in the Listing of Impairments, either alone or in combination. (Tr. 225.) The ALJ began her analysis by looking at § 112 of the Listing of Impairments, "Childhood Mental Disorders." Section 112.11 describes childhood ADHD. For ADHD to medically equal an impairment under § 112.11, the child must have medically documented findings of marked inattention, marked impulsiveness, and marked hyperactivity that "result[] in at least two of the appropriate age-group criteria in paragraph B2 of 112.02." Listing of Impairments § 112.11. "[P]aragraph B2 of 112.02" contains four "marked impairments": age-appropriate cognitive/communicative function, age-appropriate social functioning, age-appropriate personal functioning, and maintaining concentration, persistence, or pace. Id. § 112.02(B)(2)(a)-(d).

5

ALJ Strauss found that Almonte suffered from marked inattention, marked impulsiveness, and marked hyperactivity under § 112.11(A). (Tr. 225.) Moving to the "age-group criteria in paragraph B2 of 112.02," ALJ Strauss found that while Almonte had marked limitations in age-appropriate social functioning, he did not have limitations in the other three categories: age-appropriate cognitive/communicative function, age-appropriate personal functioning, or difficulty maintaining concentration, persistence, or pace. (Id.) The ALJ referenced testimony from Arias that Almonte did his homework and puzzles, and was able to dress himself. (Id.) The ALJ also cited the medical report of Dr. Mark Sperber regarding Almonte's four-year-old check-up. (Id.; see also id. at 128-29.) ALJ Strauss further noted that Almonte's "self-injurious behavior . . . has not been otherwise medically documented." (Id. at 225.) Because the ALJ found that Almonte's conditions did not meet "at least two of the appropriate age-group criteria in paragraph B2 of 112.02," Listing of Impairments § 112.11, she found that his conditions did not medically equal a condition in the Listing of Impairments. (Id.)

In opposition, Arias cites several reports that she suggests demand the conclusion that Almonte had marked limitations in age-appropriate cognitive/communicative function, age-appropriate personal functioning, and difficulty maintaining concentration, persistence, or pace. (See Arias's Motion at 9-11.) Arias quotes from two reports from the Western Queens Consultation Center that she argues documented Almonte's "poor ability to function in school and at home" (Tr. 287) and a "moderate level of functional impairment . . . . on [Almonte's] academic performance" (id. at 284). Arias also cites an October 29, 2007 report that states that Almonte "had significant problems with attention and concentration." (Id. at 355.)

Despite the reports cited by Arias, the court must limit its review solely to determine whether the ALJ's "factual findings are not supported by 'substantial evidence' or if the decision

6

is based on legal error." Shaw, 221 F.3d at 131. The reports cited by Arias notwithstanding, the evidence cited by the ALJ is "substantial" in that "a reasonable mind might accept [it] as adequate to support a conclusion." Moran, 569 F.3d at 112. The ALJ clearly weighed the record as a whole, including Arias's own testimony and other medical reports, to conclude that Almonte did not suffer from deficiencies in age-appropriate cognitive/communicative function, age-appropriate personal functioning, or maintaining concentration, persistence, or pace. Moreover, none of the reports presented by Arias demonstrate, or suggest, that Almonte suffered from marked limitations in any of the considered categories. No report suggests that Almonte's difficulties in these areas "interfered very seriously" with his ability to independently function. See George, 568 F.3d at 76. Further, it appears that the two reports from Western Queens Consultation Center were not written by a treating physician, but merely summarized the contents of Almonte's medical charts. (See Tr. 284, 287). In addition, the October 29, 2007 report stated that Almonte's prognosis was "[f]air, with continued involvement in treatment." (Id. at 358.) The ALJ based her decision that Almonte's severe impairments did not medically equal a condition in the Listing of Impairments on substantial evidence, and did not commit legal error in doing so.

2.  Functional Equivalency

The ALJ also found that Almonte's ADHD and ODD did not functionally equal a condition in the Listing of Impairments, either alone or in combination. (Tr. 226-32.) The ALJ analyzed Almonte's symptoms across the six domains set forth in 20 C.F.R. § 416.926a(b)(1), to see if Almonte had a "marked" limitation in two of them, or an "extreme" limitation in one of them. (Id.)

### a. *Acquiring and Using Information*

The ALJ found that Almonte had "less than [a] marked limitation in acquiring and using information." (Tr. 227.) The ALJ referenced Arias's testimony that Almonte performed his own homework, and that Almonte's scores on the Wechsler Intelligence Scale, a children's intelligence test, was in the average to low range and "suggested greater potential." (Id.) The ALJ also noted that Almonte's pediatrician "did not indicate any cognitive difficulties and the pediatric consultant did not indicate any cognitive difficulties." (Id.)

Arias argues that the ALJ failed to properly weigh a report from Industrial Medicine Associates that stated Almonte's condition "significantly interfered with the claimant's ability to function on a daily basis without appropriate supports." (Arias's Motion at 11; Tr. 358.) Again, the court's responsibility lays only in assessing whether the ALJ committed legal error or based her decision on less than "substantial evidence." Shaw, 221 F.3d at 131. Here, the ALJ determined that Almonte lacked a marked limitation in the acquiring and using information domain based on substantial evidence: testimony that he performed his own schoolwork and the results of a children's intelligence test. (Tr. 227.) The court further notes that the medical report cited by Arias does not at all address Almonte's limitations in the acquiring-and-using-information domain. Therefore, the ALJ could not have used this report in her analysis of Almonte's limitations in the acquiring-and-using-information domain.

### b. *Attending and Completing Tasks*

The ALJ found that Almonte had "less than [a] marked limitation in attending and completing tasks." (Tr. 228.) The ALJ referenced Arias's testimony that Almonte did his own homework. (Id.) The ALJ also noted that while Almonte's "teacher reported that [he] does not follow her directions, [] the record does not establish a marked limitation in this area." (Id.) Arias does not dispute the Commissioner's finding. In reviewing the administrative record, the

8

court concludes that the ALJ's finding that Almonte did not suffer from a marked limitation in the attending-and-completing-tasks domain was based on substantial evidence: Arias's own testimony and Almonte's school reports.

### c. *Interacting and Relating with Others*

The ALJ found that Almonte had a "marked limitation in interacting and relating with others." (Id.) The ALJ referenced Almonte's school reports that demonstrated Almonte's "poor behavior toward peers," and also cited Arias's testimony that "he does not like anyone to touch his things when he plays with his cousins." (Id.) Arias does not disagree with the ALJ's finding, but cites Arias's testimony that Almonte "[bit] other kids and kick[ed] them at school. . . . receive[d] complaints from [his] teachers. . . . never once had friends from school come over to play. . . . [and] could not interact normally with his sister." (Arias's Motion at 11.) This evidence further supports the ALJ's finding that Almonte suffered from a "marked limitation" in the interacting and relating with others domain. See 20 C.F.R. § 416.926a(i).

### d. *Moving About and Manipulating Objects*

The ALJ found that Almonte had "no limitation in moving about and manipulating objects." (Tr. 230.) The ALJ noted that "[t]he evidence fails to establish any limitations at all in this domain." (Id.) Arias does not dispute this finding. In reviewing the administrative transcript, it appears that the ALJ was correct in her determination that there was no evidence to establish a marked or extreme limitation in this domain. The ALJ, therefore, based her finding on substantial evidence.

### e. *Caring for Oneself*

The ALJ found that Almonte had "less than [a] marked limitation in the ability to care for himself." (Id. at 231.) The ALJ referenced Almonte's "ab[ility] to dress himself, putting on his shirt, pants and socks," and noted that Arias "bathe[d] him." (Id.) The ALJ noted, however, that

9

Arias testified to Almonte's "self-injurious behavior, although this is not medically documented in the record," as required by 20 C.F.R. § 416.926a(k)(3). (Id.) The ALJ further cited "school reports [that] show his impulsivity [but noted that] he has been improving his medication as reported at the psychotherapy sessions." (Id.)

Arias disagrees with the ALJ's finding that Almonte suffered from less than a marked limitation in the caring-for-oneself domain, and cites her own testimony that she was afraid to leave him alone because Almonte would hurt himself and would hit himself against furniture. (Arias's Motion at 12.) As determined by the ALJ, however, this "self-injurious behavior" was not medically documented as required by the pertinent regulation. (Tr. 231.) In canvassing the administrative record, the court cannot find any medically documented instances of Almonte intentionally injuring himself. In the absence of such evidence, the court concludes that the ALJ's finding that Almonte suffered from less than a marked limitation of his ability to care for himself was based on substantial evidence.

### f.  *Health and Physical Well-Being*

The ALJ found that Almonte had "no limitation in [his] health and physical well-being" in that "[t]here are no established limitations in this domain to be found in the objective evidentiary record." (Tr. 232.) The Commissioner cites several treatment notes that positively describe Almonte's physical health. (Commissioner's Motion at 27.) Moreover, Arias does not dispute the ALJ's finding. In the absence of evidence to the contrary, the court concludes that the ALJ's finding was based on substantial evidence.

Accordingly, the ALJ did not commit legal error in determining that Almonte was not disabled for the purposes of receiving SSI. (Tr. 232.) The ALJ did not commit legal error in finding that Almonte's severe impairments did not medically equal an impairment in the Commissioner's Listing of Impairments. (See, supra, Part III.C.1.) Nor did the ALJ commit

error by finding that Almonte's severe impairments did not functionally equal an impairment in the Commissioner's Listing of Impairments in that Almonte did not suffer from a marked limitation in two functional domains or from an extreme impairment in one functional domain. (See, supra, Part III.C.2.) The court will therefore grant the Commissioner's motion for judgment on the pleadings, and deny Arias's cross-motion.

## IV.  CONCLUSION

For the reasons discussed above, Defendant's Motion for Judgment on the Pleadings is GRANTED, and Plaintiff's Motion for Judgment on the Pleadings is DENIED. The Clerk of the Court shall close this case.

SO ORDERED.                                             s/Nicholas G. Garaufis

Dated: Brooklyn, New York                               NICHOLAS G. GARAUFIS
November 12, 2010                                       United States District Judge